IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No.  1:23-cv-02868-STV

DIANA L. FARRAH,

     Plaintiff,

v.

CITY COUNTY OF DENVER,

     Defendant.

_____

**ORDER**
_____

Chief Magistrate Judge Scott T.  Varholak

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint Under Fed. R. Civ. P. 12(b)(6) (the "Motion").  [#82]  The parties have consented to proceed before a United States Magistrate Judge for all proceedings, including entry of a final judgment.  [#34]  This Court has carefully considered the Motion and related briefing, the entire case file and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion.  For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

I.     **BACKGROUND**[1]

Plaintiff is a white female in her 60s who worked for the City/County of Denver ("CCD") from March 2013 to October 2022.  [#79 at 6, 9]  Specifically, Plaintiff worked for

---

[1] The facts are drawn from the allegations in Plaintiff's Third Amended Complaint (the "Complaint") [#79], which must be taken as true when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

the Office of Economic Development ("OED") agency, which around 2020 was split into two separate agencies, the Housing Stability ("HOST") and the Denver Economic Development Opportunity ("DEDO") agencies. [*Id.* at 9] After the split, Plaintiff was employed in the HOST agency. [*Id.*] Leadership within HOST regularly emphasized racial and cultural diversity in staffing. [*Id.* at 14] During one all staff meeting, the head of the agency "noted with apparent pride the number of foreign languages spoken by staff members." [*Id.* at 16] In one other all staff meeting, a high-level agency official referred to older employees as "the oldsters" while discussing succession concerns. [*Id.*] Once, a black employee "laughed" when Plaintiff expressed interest in advancement. [*Id.* at 22]

Between 2014 and October 2022, Plaintiff was expected to work a heavy load. [*Id.* at 6] Though the agency received approval to hire an additional employee to help with this workload, it never did. [*Id.*] Plaintiff noticed that other employees in their 60s were also assigned excessive workloads. [*Id.* at 29] At least two younger employees had less workload than Plaintiff.[2] [*Id.* at 6-7, 33] These two younger employees received evaluations that appeared to Plaintiff to be inflated, and they received recognition for tasks that Plaintiff also performed, but for which she did not receive the same recognition. [*Id.*]

Additionally, Plaintiff noticed that two employees were more friendly toward black co-workers whereas they were cool and distant toward white co-workers. [*Id.* at 17-18] Plaintiff was once told that she could do certain work to enhance her development, but this work ended up being given to a black co-worker. [*Id.* at 22] Plaintiff noticed on several

---

[2] It is unclear what position these employees held. It appears that one of the employees worked for a different agency, the Budget Management Office ("BMO"). [#79 at 23]

occasions that younger employees were promoted despite lacking relevant experience to their new positions.[3]  [*Id.* at 33-34]

Around March of 2022, a job opening for the "Manager of Grants and Compliance" position opened and Plaintiff applied.  [*Id.* at 6]  Plaintiff had approximately 16 years of experience directly relevant to the position at the time of her application.  [*Id.* at 10]  The position did not require an advanced degree, and Plaintiff met the minimum requirements.[4]  [*Id.* at 11]  When Plaintiff interviewed for the position, she felt the interviewers were hostile toward her and did not engage meaningfully with her.  [*Id.* at 24]  One of the interviewers had previously "disparag[ed] older employees."  [*Id.*]  Due to a technical difficulty, part of the interview had to be conducted over the phone rather than by video.  [*Id.*]

In May 2022,[5] Plaintiff learned that she did not get the position and that an individual who was a 51-year-old, black woman was hired ("New Manager").[6]  [*Id.* at 6, 11]  It appeared that New Manager knew about the new position before the job opening

---

[3] It is unclear if Plaintiff, or any other individual, also applied to these positions.

[4] Plaintiff additionally notes that she had received consistent satisfactory but unremarkable evaluations prior to applying for the new position.  [*Id.* at 25]  However, Plaintiff also notes that in 2020 Plaintiff's work was described as "very lacking" by one of the interviewers for the promotion position.  [*Id.* at 24]

[5] At other locations in the Complaint, this date is referred to as May 2023.  [*See*, *e.g.*, *id.* at 26]  Considering Plaintiff resigned in 2022, the Court assumes this was a typographical error.

[6] Plaintiff also notes that New Manager was hired into a different position, that of Fiscal Administrator I, despite some documented performance concerns related to accuracy, communication, and professionalism during her time working at the City BMO.  [#79 at 13-14] After this earlier promotion, New Manager received "exceeds expectations" ratings from her new supervisor.  [*Id.* at 14]  The evaluation contained praise for standard job duties.  [*Id.*]  Plaintiff did not receive recognition for completing similar work, though it is unclear if Plaintiff ever held the position of Fiscal Administrator I or had the same supervisor.  [*Id.*]

was posted.  [*Id.* at 25]  New Manager was less qualified than Plaintiff and was a cousin of the hiring director, who was also black.  [*Id.* at 6, 11]  New Manager had 3.5 years of experience in senior level positions, whereas Plaintiff had 23 years of senior level experience.  [*Id.* at 11]  In her application, New Manager "appeared to have overstated her responsibilities" in various of her prior job roles.  [*Id.* at 12]  New Manager had no formal education in accounting, but had received a bachelor's degree in political science and a master's degree in public policy with a financial concentration.  [*Id.* at 15]

Plaintiff was initially told that she wasn't selected because she would become too impatient.  [*Id.* at 26]  None of Plaintiff's prior evaluations indicated that she struggled with patience though New Manager expressed concerns about Plaintiff's patience, at some point in time.  [*Id.*]  Though this part of the Complaint is hard to understand, it seems that at some point Plaintiff was in communication with New Manager about why Plaintiff was not hired, even though New Manager had no role in the hiring decision.  [*Id.* at 27]  New Manager at some point described Plaintiff's "responses"—presumably those written in Plaintiff's application or orally recited during Plaintiff's interview—as "incomplete."[7]  [*Id.* at 27]  Though unclear as to timing, the Complaint alleges that Defendant also described Plaintiff as "not qualified" for the role.  [*Id.* at 28]

---

[7] The Court is not certain whether this commentary came from New Manager or from the Finance Director.  Plaintiff appears to refer to both New Manager and the Finance Director as "Employee D" throughout the Complaint.  [*See*, *e.g.*, *id.* at 8, 11]  At times, Plaintiff refers to the Finance Director as "Employee C."  [*See*, *e.g., id.* at 11, 21]  Because Plaintiff appears to be referring to New Manager as "Employee D" in the paragraphs prior to and after this factual assertion [*see*, *e.g., id.* at 26 ("HOST hired Employee D [into the New Manager position] on March 31, 2023"), 28 ("HOST promoted Employee D")], the Court assumes that Plaintiff refers to the same "Employee D" when identifying the individual that stated Plaintiff's responses were incomplete.  Assuming this is a correct interpretation of the Complaint, it is unclear why or to what extent New Manager had access to Plaintiff's "responses."

After being hired, New Manager implemented new procedures that increased the time and complexity of Plaintiff's audit responsibilities.  [*Id.* at 8]  These changes contradicted the standard practices Plaintiff had used for years prior.  [*Id.*]  The changes impaired Plaintiff's ability to complete her assignments efficiently.  [*Id.*]

At some point in 2022, after learning that New Manager was hired for the position, Plaintiff filed a complaint of discrimination.[8]  [*Id.* at 6, 7, 18]  After this, Plaintiff was "isolated, denied opportunities to participate in meetings that were relevant to her position and denied opportunities to attend training that were relevant to her position."  [*Id.* at 7]  In addition, she was asked to report to New Manager when she had previously reported to the Finance Director and New Manager started trying to take control of meetings where Plaintiff had previously been in control.  [*Id.* at 7, 18]  New Manager and her supervisor later implemented a policy that prohibited employees from submitting partially completed workpapers to external auditors, even though this practice was common and accepted in the auditing field.[9]  [*Id.* at 18]

At some point in time, Plaintiff was not allowed to respond to an audit issue raised by external auditors even though other employees were regularly afforded this opportunity.  [*Id.* at 16]  When Plaintiff raised concerns about this treatment, New Manager accused Plaintiff of insubordination.  [*Id.* at 7, 30]  On another occasion, Plaintiff made a minor coding error and New Manager threatened to initiate an audit of Plaintiff's

---

[8] Plaintiff filed age and race discrimination complaints with the Colorado Civil Rights Division ("CCRD").  [*Id.* at 9]  The CCRD issued a right to sue letter on September 2, 2023.  [*Id.*]

[9] Plaintiff alleges that this policy was designed to discredit Plaintiff's handling of subrecipient monitoring but provides no factual support for this conclusion.  [*Id.* at 18]

timecards.  [*Id.* at 19]  Normally, these types of errors did not result in formal disciplinary action or audit threats.  [*Id.*]

Plaintiff resigned in October 2022.  [*Id.* at 8]  After Plaintiff resigned, the Finance Director and New Manager told other agency employees that Plaintiff was fired and had not adequately performed her job for two years.  [*Id.*]  Plaintiff maintains that these statements were false as Plaintiff was not fired and remains eligible for rehire.  [*Id.* at 8-9]

Based on these allegations, Plaintiff asserts six claims for relief.  First, she asserts a claim for age discrimination under the Age Discrimination and Employment Act ("ADEA").  [*Id.* at 35-39]  Second, Plaintiff asserts a claim for retaliation under the ADEA.  [*Id.* at 39-41]  Third, Plaintiff asserts a claim for racial discrimination in violation of Title VII and the Colorado Anti-Discrimination Act ("CADA").  [*Id.* at 42-45]  Fourth, Plaintiff asserts a claim for racial discrimination and retaliation under 42 U.S.C. § 1981.  [*Id.* at 46-49]  Fifth, Plaintiff asserts a claim for racial discrimination in violation of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983.  [*Id.* at 49-52]  Sixth, Plaintiff asserts a claim for retaliation under Title VII and CADA.  [*Id.* at 52-54]

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (alteration in original) (quoting *Smith v. United*

*States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S.  544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.  662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Plausibility refers "to the scope of the allegations in a complaint:  if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir.  2008) (quoting *Twombly*, 550 U.S.  at 570).  "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief."  *Id.*  (quoting *Twombly*, 550 U.S.  at 556).  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir.  2007).

### B.    Pro Se Litigants

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)).  "The *Haines* rule applies to all proceedings involving a pro se litigant."  *Id.* at 1110 n.3.  The Court, however, cannot be a pro se litigant's advocate.  *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).  Moreover, pro se parties must "follow the same rules of

procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (quoting *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)).

## III.   ANALYSIS

### A.   Title VII, CADA, Section 1981, and Section 1983 Racial Discrimination

#### 1.   Discrimination Claims

Defendant argues that Plaintiff has not provided any allegations or evidence that demonstrate that Defendant declined to promote Plaintiff under circumstances that give rise to an inference of racial discrimination.  [#82 at 10-12]  In addition, Defendant argues that Plaintiff has not demonstrated an adverse employment action taken against her in her race discrimination for different terms and conditions claim.  [*Id.* at 12-13]  The Court addresses each argument in turn.

Title VII makes it unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Section 1981 provides that all persons in the United States "shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  *Id.* § 1981.  Section 1983 creates "a remedy against those who, acting under color of law, violate rights secured by federal statutory or constitutional law."  *Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1243 (10th Cir. 2000) (citing *Reynolds v. Sch. Dist. No. 1, Denver, Colo.*, 69 F.3d 1523, 1536 (10th Cir. 1995)). "Racial . . . discrimination can violate the Fourteenth Amendment right to equal protection of the law and state a cause of action under 42 U.S.C. § 1983."  *Id.* (citing *Poolaw v. City of Anadarko*, 660 F.2d 459, 462 (10th Cir. 1981)).

"A plaintiff proves a violation of Title VII either by direct evidence of discrimination or by following the burden-shifting framework of" *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (citing *Crowe v. ADT Sec. Servs. Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011)). Under the *McDonnell Douglas* approach, a plaintiff first is required to set forth a prima facie case of discrimination: "(1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she is qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class." *Id.* (citing *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 531 (10th Cir. 1998)). "In racial discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under §§ 1981 or 1983 or Title VII."[10] *Carney v. City and Cnty. of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008) (quoting *Baca v. Sklar*, 398 F.3d 1210, 1218 n.3 (10th Cir. 2005)). And "CADA discrimination . . . claims are subject to the same legal standards as Title VII claims." *Agassounon v. Jeppesen Sanderson, Inc.*, 688 F. App'x 507, 509 (10th Cir. 2017) (citing *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1219 n. 11 (10th Cir. 2010); *Colo. Civ. Rts. Comm'n v. Big O Tires, Inc.*, 940 P.2d 397, 400 (Colo. 1997)).

Title VII "proscribe[s] racial discrimination . . . against whites on the same terms as racial discrimination against nonwhites." *McDonald v. Santa Fe Trail Transp. Co.*, 427

---

[10] For municipal liability to arise under Sections 1981 and 1983, a plaintiff must demonstrate, in addition to the prima facie case, that municipal officials "acted pursuant to a 'custom or policy' of 'discriminatory employment practices.'" *Carney v. City and Cnty. of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008) (quoting *Randle v. City of Aurora*, 69 F.3d 441, 446 n.6, 447 (10th Cir. 1995)); *Busby v. City of Tulsa*, No. 11-CV-447-JED-PJC, 2015 WL 1467817, at *9 (N.D. Okla. Mar. 30, 2015) (citing *Carney*, 534 F.3d at 1273). Defendant briefly argues that Plaintiff does not provide any detailed custom or policy to support her discrimination claim. [#82 at 12] The Court does not address this argument because Plaintiff's claims fail for other reasons.

U.S. 273, 279 (1976).  For a failure to promote claim, the prima facie elements will involve a showing that a plaintiff is a member of a protected class, was not promoted, was qualified for the promotion, and the position remained open or was filled by a member not of the same protected class.  *See Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 672 (D. Kan. 2004) (citing *Amro v. Boeing Co.*, 232 F.3d 790, 797 (10th Cir. 2000)).  For a different terms and conditions claim, a plaintiff must show that they suffered an adverse employment action.  *Sanchez,* 164 F.3d at 531-32.  The Tenth Circuit adopts the following liberal construction of adverse employment action:

> Such actions are not simply limited to monetary losses in the form of wages or benefits. Instead, we take a case-by-case approach, examining the unique factors relevant to the situation at hand. Nevertheless, we will not consider a mere inconvenience or an alteration of job responsibilities to be an adverse employment action.

*Id.* at 532 (internal quotations and citations omitted).  Actions may be deemed to affect the terms and conditions of a plaintiff's employment if they "affect[] the likelihood that the plaintiff will be terminated, undermine[] the plaintiff's current position, or affect[] the plaintiff's future employment opportunities."  *Medina v. Income Support Div.*, 413 F.3d 1131, 1137 (10th Cir. 2005) (citing *Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1104 (10th Cir. 1998)).  A plaintiff need not show that an employment action caused a significant injury, but rather that they "experienced 'some harm respecting an identifiable term or condition of employment' as a result of that action."  *Scheer v. Sisters of Charity of Leavenworth Health Sys., Inc.*, 144 F.4th 1212, 1216 (10th Cir. 2025) (quoting *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024)).  "This means that an employer's action 'must have left [the plaintiff] worse off, but need not have left her significantly so.'"  *Id.* (quoting *Muldrow*, 601 U.S. at 359) (emphasis omitted).

After a plaintiff makes this initial, prima facie showing, the burden shifts to the defendant who must "produce a legitimate, non-discriminatory reason for the adverse employment action." *Khalik*, 671 F.3d at 1192 (citing *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002)). "If the defendant does so, the burden then shifts back to the plaintiff to show that the plaintiff's protected status was a determinative factor in the employment decision or that the employer's explanation is pretext." *Id.* (citing *Garrett*, 305 F.3d at 1216). Thus, "[a] plaintiff 'may succeed [under the *McDonnell Douglas* framework] either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 309 (2025) (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981)).

While at the motion to dismiss stage, a plaintiff need not "set forth a prima facie case for each element, she is required to set forth plausible claims." *Khalik*, 671 F.3d at 1193. "[T]he elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Id.* at 1192 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002); *Twombly*, 550 U.S. at 570). Thus, as to a particular claim, "specific facts are not necessary, [but] some facts are." *Id.* at 1193 (internal quotations and citations omitted).

Here, Plaintiff alleges that she is a white woman who applied for a management position that was given to a black woman who was "less qualified" in that she had less relevant experience than Plaintiff. [#79 at 6] Plaintiff further alleges that one of the

11

interviewers had previously described Plaintiff's work as "very lacking."[11]    [*Id.* at 24] Additionally, New Manager seemed to have already known about the position's availability before the position was made public.    [*Id.* at 25]    Plaintiff was originally told by an unidentified individual that the reason she was not selected for the position was because she would become too impatient, though Plaintiff's previous evaluations did not express concern with patience.    [*Id.* at 26]    In contrast, New Manager stated that Plaintiff's responses were "incomplete."    [*Id.* at 27]

In addition, Plaintiff alleges that she was "not provided with developmental or advancement opportunities afforded to . . . non-white employees."    [*Id.* at 14]    For example, after being told she could work on FEMA grants, a black employee informed Plaintiff that she could not work on the FEMA grants and another black co-worker was at some point in time permitted to work on the grants.    [*Id.* at 22]    Once, when Plaintiff brought up an interest in advancement, a black co-worker laughed in response.    [*Id.*]

The Complaint also alleges that leadership in Plaintiff's workplace emphasized racial and cultural diversity in staffing.    [*Id.* at 14]    During one all-staff meeting, the head of HOST noted with "apparent pride" the number of foreign languages spoken by staff members.    [*Id.* at 16]    Plaintiff perceived that at least two employees were more friendly toward black employees than white employees.    [*Id.* at 17-18]

These allegations are not sufficient to plead a plausible discrimination claim for failure to promote or for different terms and conditions.    First, Plaintiff provides nothing more than mere speculation that the decision not to promote Plaintiff was motivated by

---

[11] Plaintiff appears to imply that this comment was motivated by a hostility towards Plaintiff, though Plaintiff does not allege that the hostility was related to race.    [*Id.* at 23-24]

racial animus.  Plaintiff provides her subjective opinion[12] that she was more qualified for the position at issue and that New Manager's application contained red flags,[13] but she alleges nothing whatsoever about the duties of the position itself.

Even in the event that it was clear Plaintiff had a greater amount of experience relevant to the position than New Manager, Plaintiff does not adequately allege that the decision not to promote Plaintiff was motivated by race.  Plaintiff appears to speculate that race was a deciding factor because New Manager was black and Plaintiff was white, but Plaintiff does not indicate that any person involved in the promotion decision-making process had a racial animus.  Instead, she appears to allege that the interviewers had a general hostility toward Plaintiff, possibly based on her age.  [#79 at 24]

Nor does Plaintiff's allegations about the general atmosphere at HOST plausibly support the conclusion that the failure to promote Plaintiff was racially motivated.  An agency's general emphasis on racial and cultural diversity does not plausibly imply that Defendant engaged in racial discrimination by not promoting Plaintiff.  Similarly, a leader's pride that multiple languages were spoken by agency employees has nothing to do with race.  And neither of the individuals that Plaintiff alleges were friendlier toward black

---

[12] In her response, Plaintiff argues that she supplies more than her subjective opinion and that she supplies concrete facts about her and New Manager's credentials and the job's minimum and preferred qualifications.  [#87 at 15]  However, Plaintiff does not provide any information at all about the qualifications or duties of the position aside from mentioning that the position did not require an advanced degree.  [#79 at 11]

[13] Plaintiff additionally alleges that discrepancies in New Manager's application were "overlooked" in an "effort to promote African American candidates."  [#79 at 12]  But Plaintiff does not provide any facts to support this assertion.  Accordingly, the Court does not need to accept this conclusory allegation as true.  See Hall, 935 F.2d at 1110 ("conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based").

employees than white employees were alleged to have been involved with the decision to promote New Manager over Plaintiff.

Accordingly, the only facts Plaintiff pleads to indicate the existence of racial discrimination in the promotion process are that a black woman who Plaintiff subjectively identified as less qualified received the position over Plaintiff. And though Plaintiff claims that New Manager stating that Plaintiff's answers were "incomplete" indicates pretext, New Manager was not alleged to have been involved with the promotion decision.[14] This is not sufficient to indicate a racial motive. Plaintiff therefore has not elevated her claims above the level of mere speculation; thus, the Court does not find that a plausible allegation of failure to promote has been made.[15]

Second, Plaintiff does not allege that any adverse action was taken against her which was motivated by race. Plaintiff makes one specific allegation that she was not

---

[14] The Court reiterates that the Complaint is not entirely clear as to who stated Plaintiff's answers were incomplete. Regardless, Plaintiff does not allege that either the Finance Director or New Manager were involved in the decision not to promote Plaintiff. In addition, Plaintiff fails to provide any information as to who originally told Plaintiff that she was not selected because of her impatience.

[15] In her response, Plaintiff argues that discriminatory intent can be plausibly inferred in this case from circumstantial facts such as Defendant's selection of a black candidate, Defendant's waiver or relaxing of stated requirements, Defendant's offering of shifting explanations to justify the selection of New Manager, and the backdrop of general disparate treatment among workers. [#87 at 15] However, Plaintiff never alleged that Defendant waived or relaxed any requirement for the promotion position. Plaintiff seemingly alleged that both herself and New Manager met the requirements of the position, but that Plaintiff believed she had more relevant experience. Nor does Plaintiff plausibly allege that Defendant has offered shifting explanations for choosing not to promote Plaintiff. Plaintiff fails to provide any information as to who originally told Plaintiff that she was not selected because of her impatience. And as explained above, the "shifting" explanation—that Plaintiff gave incomplete answers—came from someone who was not involved in the decision-making process. Finally, the Complaint's vague assertions that non-white employees received more development opportunities than white employees do not alone make it plausible that the decision to not promote Plaintiff was racially motivated.

allowed to work on FEMA grants, but she does not indicate that this caused her any harm respecting an identifiable term or condition of employment.  Indeed, it appears that Plaintiff believes she was still more qualified for the promotion than New Manager despite not having worked on FEMA grants.[16]

And beyond the reference to FEMA grants, the remainder of Plaintiff's assertions about not being afforded the same development opportunities as non-white employees are vague and are therefore not sufficient to state a plausible different terms and conditions claim.[17]  Allegations that may meet the adverse employment action standard promulgated by the United State Supreme Court include actions such as being transferred to another job with a less regular schedule, having primary duties changed, and losing job perks such as having a take-home car.  *Muldrow*, 601 U.S. at 359.  Here, Plaintiff does not identify any particular development opportunities she was prohibited from attending nor how her inability to participate caused a specific harm respecting an identifiable term of condition of her employment.  Accordingly, Plaintiff has not plausibly alleged a claim of racial discrimination in the form of different terms and conditions.

---

[16] Plaintiff appears to allege that New Manager was allowed to work on FEMA grants at some point in time.  [#79 at 22]  However, the Court again notes that the identity of "Employee D" (who the Court assumes was New Manager in this context) is not clear, as it appears to change throughout the Complaint.

[17] In her response, Plaintiff argues that she alleges she also lost professional standing, had her job responsibilities reduced, and was placed in a less favorable position in the organizational hierarchy.  [#87 at 18]  However, none of these allegations are tied to racial discrimination in the Complaint.  To the extent any specifics are provided in the Complaint, Plaintiff implies that these actions were motivated by retaliation.  [#79 at 18]  There is no indication that anyone involved with these actions was motivated by racial discrimination.  Plaintiff also argues that she alleged she was assigned a disproportionately higher workload and excluded from certain meetings.  [#87 at 18]  However, again, Plaintiff does not allege that these actions were motivated by racial discrimination.  Rather, she alleges they were motivated by age discrimination and retaliation.  [#79 at 18]

15

The Court therefore GRANTS the Motion to the extent that it seeks to dismiss the failure to promote and different terms and conditions components of Claims Three, Four, and Five.

### 2.    Hostile Work Environment Claims

Though she does not bring it as a separate count, Plaintiff also asserts that she was subject to a hostile work environment because of her age and race. [*See*, *e.g.*, #79 at 8, 10, 17-21] Defendant argues that this claim should be dismissed because the facts alleged do not rise to the minimum threshold needed to support a claim for relief. [#82 at 13] "[I]n addition to prohibiting discrete acts of discrimination, Title VII also protects employees from racially hostile work environments." *Young v. Colo. Dep't of Corr.*, 94 F.4th 1242, 1249 (10th Cir. 2024) (citing *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1138 (10th Cir. 2008)). "A hostile work environment claim requires a showing that the plaintiff's 'workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or sufficiently pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Hakeem v. Denver Pub. Schs.*, No. 20-cv-00083-PAB-KLM, 2020 WL 4289422, at *8 (D. Colo. July 7, 2020) (quoting *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 897 (10th Cir. 2017)), *report and recommendation adopted*, 2020 WL 4287181 (D. Colo. July 27, 2020).

"To establish a prima facie case of hostile work environment, a plaintiff must show: (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) it must stem from the animus against a protected class to which the defendant thinks the plaintiff belongs." *Slover v. Univ. of Colo.*, No. 21-cv-01378-SKC, 2022 WL 833364, at *4 (D. Colo. Mar. 20, 2022) (citing *Bloomer v. United*

16

*Parcel Serv., Inc.*, 94 F. App'x 820, 825 (10th Cir. 2004)).  In evaluating a hostile work environment claim, the Court "look[s] to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (quotation omitted).   "A discriminatory and abusive environment must affect the employee's work environment so substantially as to make it intolerable for her to continue."  *Creamer v. Laidlaw Transit, Inc.*, 86 F.3d 167, 170 (10th Cir. 1996) (quoting the district court opinion which the Tenth Circuit concluded was an "accurate discussion of the applicable law").

"General harassment alone is not actionable."  *Williams*, 849 F.3d at 897 (citing *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994)).  "The mere utterance of a statement which 'engenders offensive feelings in an employee' would not affect the conditions of employment to [a] sufficiently significant degree to violate Title VII."  *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1537 (10th Cir. 1995) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).  The standards and burdens of establishing a hostile work environment under Section 1981 are the same as those under Title VII.  *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1410 (10th Cir. 1997) (citing *Bolden*, 43 F.3d at 550; *Durham v. Xerox Corp.*, 18 F.3d 836, 838-39 (10th Cir. 1994))

With respect to her hostile work environment claim, Plaintiff alleges that at least two co-workers were "friendlier" towards black employees than white employees.  [#79 at 17-18]  In addition, after filing a complaint regarding racial and age discrimination, Plaintiff began to be excluded from team meetings.  [*Id.* at 18]  Plaintiff further alleges that she

17

was denied certain personal development opportunities that were offered to less qualified employees.  [*Id.*]  Plaintiff alleges that New Manager took control of meetings that Plaintiff previously controlled and created and implemented a new policy that barred employees from submitting partially completed papers.  [*Id.*]  Finally, Plaintiff asserts that she was not allowed to rebut certain audit findings, New Manager once threatened to initiate an audit of Plaintiff's timecards after she committed a minor coding error, and Plaintiff was accused of insubordination.[18]  [*Id.* at 19]

These allegations are not sufficient to create a plausible claim of a hostile work environment.  Plaintiff has not alleged that racial animus toward her was either severe or pervasive.  Indeed, Plaintiff does not allege that most of the actions related to her hostile work environment claim were even motivated by a racial animus.[19]  For example, Plaintiff does not allege that New Manager took control of meetings because she had a racial animus toward Plaintiff, Plaintiff does not allege that she was prevented from rebutting certain audit findings because of her race, and Plaintiff does not allege that New Manager threatened to initiate an audit of Plaintiff's timecards because of a racial animus.  The only claim Plaintiff makes that involves a racial animus is that at least two of her co-workers

---

[18] Plaintiff also asserts once in the Complaint that "race-based favoritism and derogatory comments about white employees were tolerated during official diversity trainings and workplace culture discussions." [#79 at 43]  Plaintiff does not provide any facts in support of this conclusion.  It is unclear if the derogatory commentary Plaintiff refers to was leadership pride regarding foreign-language speakers, or if Plaintiff references other instances which she fails to allege in the Complaint.  Regardless, this allegation without any additional information does not make Plaintiff's hostile work environment claim plausible.

[19] Many of the facts Plaintiff alleges in support of her hostile work environment claim are actions Plaintiff implies were motivated by retaliation.  [*See*, *e.g.*, *id.* at 18 (alleging that her exclusion from meetings occurred after Plaintiff filed a complaint about race and age discrimination)]  Nothing in the Complaint indicates that these acts were motivated by a racial animus.

were generally friendlier toward black employees than white employees.  It is implausible that this fact alone amounts to harassment, let alone harassment so severe and pervasive to have created an abusive, intolerable environment.  Accordingly, the Court GRANTS the Motion to the extent that it seeks dismissal of any hostile work environment component of Claims Three and Four.

### B.    Title VII, CADA, and Section 1981 Retaliation

Defendant argues that Plaintiff does not provide plausible assertions in support of her retaliation claims.  [#82 at 7-9]  Title VII makes it unlawful for an employer to retaliate against an employee "because [s]he has opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e-3(a).  In the Tenth Circuit, "a plaintiff bringing a retaliation claim 'must establish that retaliation played a part in the employment decision and may choose to satisfy this burden in two ways.'"  *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011) (quoting *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1224-25 (10th Cir. 2008)).  A plaintiff may either directly establish that retaliation played a motivating part in the employment decision or rely on the three-part framework established in *McDonnell Douglas* to indirectly prove retaliation.  *Id.* (citing *Fye*, 516 F.3d at 1225, 1227).

Under the *McDonnell Douglas*/indirect approach, the plaintiff must first make out a prima facie case of retaliation by showing: "(1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."  *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008) (quotation omitted).  "If the plaintiff establishes a prima facie case,

19

the employer must then offer a legitimate, nonretaliatory reason for its decision." *Twigg*, 659 F.3d at 998 (citing *Somoza*, 513 F.3d at 1211). "Finally, once the employer has satisfied this burden of production, the plaintiff must show that the employer's reason is merely a pretext for retaliation." *Id.* (citing *Somoza*, 513 F.3d at 1211).

An employer's action is materially adverse if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotation omitted). "CADA . . . retaliation claims are subject to the same legal standards as Title VII claims." *Agassounon, Inc.*, 688 F. App'x at 509 (citing *Johnson*, 594 F.3d at 1219 n. 11; *Colo. Civ. Rts. Comm'n*, 940 P.2d at 400). And "the showing required to establish retaliation is identical under § 1981 and Title VII." *Twigg*, 659 F.3d at 998 (quoting *Roberts*, 149 F.3d at 1110).

As previously stated, at the pleading stage, a plaintiff "is not required to set forth a prima facie case for each element." *Khalik*, 671 F.3d at 1193. However, a plaintiff must set forth plausible claims, and the elements of an alleged cause of action help to determine whether a claim is plausible. *Id.* at 1192. "Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001). For example, "[w]ithout other evidence, three or more months between the protected activity and the adverse action is insufficient to establish a causal connection." *Kenfield v. Colo. Dep't of Pub. Health & Env't*, 557 F. App'x 728, 733 (10th Cir. 2014) (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997)).

Plaintiff's allegations in support of her retaliation claim are very sparse. Plaintiff alleges that she filed a race discrimination claim with the CCRD, but does not explain

when this occurred.  [#79 at 9]  Plaintiff does not explain who was aware of the claim or when they may have become aware of the claim.[20]

Instead, Plaintiff makes general allegations about changes she experienced over the course of her employment.  For example, she alleges that, at some point after filing the complaint, she began to be excluded from team meetings and policy development meetings.  [*Id.* at 18]  In addition, she alleges that New Manager started to take over control of certain meetings Plaintiff previously controlled and helped implement a policy which barred employees from submitting paperwork in ways that were accepted in the auditing field.  [*Id.*]  Plaintiff alleges that she was not allowed to rebut audit findings related to her assignments, though other employees were, and when Plaintiff complained she was accused of insubordination.  [*Id.* at 19, 30]  She further alleges that New Manager threatened to initiate an audit of Plaintiff's timecards after a "minor coding error."  [*Id.* at 19]  And, finally, Plaintiff alleges that, after she quit, the Finance Director and New Manager told other employees that Plaintiff had been fired and had not performed her job adequately for two years.[21]  [*Id.* at 8]

---

[20] Though Plaintiff argues in her response that she specifies that she filed the charge of discrimination with the CCRD and the EEOC, and that she need not plead the exact date or recipient of each communication [#87 at 10], she must at least plausibly plead that the allegedly retaliatory actions were undertaken by someone who knew about Plaintiff's complaint.  Plaintiff does not do so here.  Plaintiff further argues in her response that she pleads temporal proximity and decision-maker knowledge [*id.* at 11], but she does not cite to the portion of the Complaint where she purportedly pleads such facts and the Court cannot find any such factual allegations in the Complaint.  Thus, it is not clear from the Complaint when Plaintiff complained, when she began experiencing allegedly retaliatory actions, or what decision-makers were aware of the complaint.

[21] In Plaintiff's response, Plaintiff also states that she alleged that "Employee E," a younger male employee, restricted Plaintiff's communications, limited her participation in group assignments, and implemented practices that impaired her ability to perform required monitoring duties and to rebut audit findings. [#87 at 13]  The Court cannot find any of these allegations in the Complaint, and thus does not consider them here.

These facts do not sufficiently allege retaliation.  Like in *Khalik*, Plaintiff fails to provide any context as to when Plaintiff complained or to whom.  *See Khalik*, 671 F.3d at 1194.  There is no allegation of any nexus between the person(s) to whom Plaintiff complained and New Manager or any other individual who engaged in the conduct Plaintiff alleges to have been retaliatory.  Like in *Khalik*, Plaintiff provides nothing more than "sheer speculation" to link any of the aforementioned actions to a retaliatory motive. *See id.*  This is insufficient to state a plausible claim of retaliation under Title VII or CADA. *See id.*

While the Tenth Circuit "do[es] not mandate the pleading of any specific facts in particular," Plaintiff should have some knowledge of details that she could plead to satisfy the plausibility requirement.  *Id.*  For example, Plaintiff should know who she complained to, when she complained, when the allegedly retaliatory actions occurred, and why she believed that those actions had a retaliatory motive.  Plaintiff's Title VII, Section 1981, and CADA retaliation claims are apparently based solely on the fact that at some point in time Plaintiff complained to an unidentified individual through an unidentified mechanism about racial discrimination, and at some other future point, Plaintiff experienced some changes in her employment.  Without more, this claim is not plausible under the *Twombly/Iqbal* standard.  Accordingly, the Court GRANTS the Motion to the extent that it seeks dismissal of Claim Six and the retaliation component of Claim Four.

### C.    ADEA Discrimination

#### 1.    Discrimination Claim

Defendant argues that Plaintiff's age discrimination claim should be dismissed because Plaintiff has not asserted any plausible facts in support of the claim.  [#82 at 2-

7]  Under the ADEA, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  "To prove a prima facie case of age discrimination, a plaintiff must show: '1) she is a member of the class protected by the [ADEA]; 2) she suffered an adverse employment action; 3) she was qualified for the position at issue; and 4) she was treated less favorably than others not in the protected class.'"  *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1279 (10th Cir. 2010) (quoting *Sanchez*, 164 F.3d at 531).  For a failure to promote claim under the ADEA, the prima facie case will thus require a plaintiff to demonstrate that: (1) she was a member of a protected class, (2) she applied for and was qualified for the promotion, (3) she was rejected despite her qualifications, and (4) the position was later filled by someone outside of the protected class.  *MacKenzie v. City and Cnty. of Denver*, 414 F.3d 1266, 1277-78 (10th Cir. 2005), *abrogated on other grounds by*, *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018).  The class protected by the ADEA are individuals who are aged 40 or older.  *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996).

When asserting a different terms and conditions discrimination claim, a plaintiff must identify an adverse action which was taken against them.  *See Jones*, 617 F.3d at 1279.  Like adverse employment actions under Title VII, the Tenth Circuit takes a case-by-case approach to determining whether particular actions qualify as adverse employment actions.  *Id.*  Allegation of a mere inconvenience will not suffice.  *Id.*  Nonetheless, a plaintiff need not show that an adverse employment action caused a significant injury, but rather that they "experienced 'some harm respecting an identifiable term or condition of employment' as a result of that action."  *Scheer*, 144 F.4th at 1216

23

(quoting *Muldrow*, 601 U.S. at 355).  Further, "to succeed on a claim of age discrimination, a plaintiff must prove by a preponderance of the evidence that her employer would not have taken the challenged action but for the plaintiff's age."  *Jones*, 617 F.3d at 1277 (citing *Gross v. FLB Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)).

With respect to her age discrimination claim, Plaintiff alleges that she applied for the Manager of Grants and Compliance position when she was 65.  [#79 at 6]  51 year-old New Manager, who was ultimately hired, appeared to have been aware of the position opening before it was publicly announced.  [*Id.* at 11, 25] Plaintiff alleges that New Manager was hired despite the fact that Plaintiff had more experience.  [*Id.* at 11-12] Plaintiff was told that she was not promoted because she would become too impatient, though her evaluations never identified any concerns with impatience.  [*Id.* at 26]  New Manager subsequently suggested Plaintiff's responses in the application and/or interview were incomplete.  [*Id.* at 27]  These are similar to Plaintiff's race discrimination allegations.

With respect to the age discrimination claim, however, there is more.  According to the Complaint, one of the interviewers was a younger male who Plaintiff had previously attempted to train.  [*Id.* at 23-24]  Another interviewer had previously disparaged older employees.  [*Id.* at 24]  For example, this interviewer had overseen the exit of an older worker in her department and had shown "overt irritation" when Plaintiff asked questions.  [*Id.*]  The interviewers did not appear engaged in the interview with Plaintiff.  [*Id.*]

In addition to these allegations specifically related to the Manager of Grants and Compliance Position, Plaintiff alleges that she perceived that the majority of individuals who were promoted or hired into management positions at HOST were young people.  [*Id.* at 15, 29, 33]  One example of this was a younger male employee who was promoted

even though Plaintiff was more experienced, Plaintiff had herself trained the younger employee, and Plaintiff had needed to correct significant regulatory errors made by the younger employee. [*Id.* at 33-34] Plaintiff's workload far exceeded that of the younger male employee. [*Id.* at 7] And although HOST had received approval to hire another employee to help with this workload, it never hired anyone while Plaintiff remained employed. [*Id.* at 6, 22-23]

In addition, Plaintiff observed that generally employees in their 60s were subjected to excessive workloads and treated with hostility by supervisors. [*Id.* at 29] At least two younger employees had more downtime than Plaintiff for development. [*Id.* at 7] These employees were given accolades for tasks that Plaintiff performed but for which she was never recognized. [*Id.* at 7] Plaintiff also alleges that younger employees were favored in performance evaluations. [*Id.* at 33] And, indeed, in one all staff meeting, senior leadership referred to older employees as "the oldsters" when discussing succession concerns. [*Id.* at 16]

Thus, unlike Plaintiff's racial discrimination claim, Plaintiff has provided sufficient detail to plausibly allege an age-based failure to promote claim and a different terms and conditions claim. First, Plaintiff adequately alleges that she was 65 years old, was qualified for a promotion, did not receive the promotion, and the person who was promoted was 14 years younger than her. In addition, Plaintiff alleges that at least one of the interviewers for the promotion had previously disparaged older employees and was particularly irritated by Plaintiff. Plaintiff also alleges that older employees generally were not promoted and provides a specific example of a younger employee being promoted despite having less experience and having demonstrated a poor quality of work. This is

25

sufficient to create a plausible inference that the decision not to promote Plaintiff was motivated by discrimination on the basis of Plaintiff's age. *See*, *e.g., Cline v. Clinical Perfusion Sys., Inc.*, 92 F.4th 926, 935-36 (10th Cir. 2024) (finding allegations that an employer hired younger, less qualified employees and indications that the employer's reasoning for failing to hire a plaintiff were false is sufficient to plausibly allege a claim under the ADEA).

Second, Plaintiff alleges that she was subjected to excessive workloads because of her age, as were other older employees. Plaintiff identifies specific younger employees that were given lesser workloads, and she notes that this was a trend across the agency. Plaintiff alleges that she was not able to develop in her career as a result of a lack of down time. This is not a mere inconvenience. Rather, this appears to have harmed the condition of Plaintiff's employment and her ability to be promoted. At this stage, Plaintiff need only make a plausible allegation that she experienced different terms and conditions because of her age. She does so here. Accordingly, the Court DENIES the Motion to the extent that it seeks to dismiss the failure to promote and different terms and conditions components of Claim One.

### 2.    Hostile Work Environment Claim

As previously stated, though Plaintiff does not bring it as a separate count, Plaintiff also asserts that she was subject to a hostile work environment because of her age and race. [*See*, *e.g.*, #79 at 8, 10, 17-21] Defendant argues that this claim should be dismissed because Plaintiff provides little to no detail supporting the claim outside of conclusory assertions. [#82 at 13-14] Under the ADEA, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions,

or privileges of employment, because of such individual's age." 29 U.S. § 623(a)(1). "Age discrimination can form the basis of a hostile-environment claim if (1) the employee was discriminated against because of her age; and (2) the discrimination created a workplace so permeated with severe or pervasive intimidation, ridicule, and insult, that it altered the employment conditions and created an abusive working environment." *Howell v. New Mexico Dep't of Aging & Long Term Servs.*, 398 F. App'x 355, 359 (10th Cir. 2010) (citing *Mackenzie*, 414 F.3d at 1280)

Like a hostile work environment claim under Title VII, a plaintiff alleging a hostile work environment claim under the ADEA must establish that the working environment was "both subjectively and objectively hostile or abusive." *Mackenzie*, 414 F.3d at 1280 (citing *Harris*, 510 U.S. at 23; *Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir. 1998)). To determine whether a working environment was hostile and abusive, courts look to circumstances including: "(1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (2) whether the conduct unreasonably interferes with the employee's work performance." *Id.* (citing *Harris*, 510 U.S. at 23). "The Supreme Court has instructed that courts judging hostility should filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of age-related jokes, and occasional teasing." *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Like her Title VII and Section 1981 hostile work environment claims, Plaintiff fails to plausibly allege a hostile work environment claim under the ADEA. Plaintiff alleges that she was excluded from team meetings, that New Manager took control of meetings Plaintiff previously controlled, that New Manager implemented a new policy that affected

27

all employees including Plaintiff, that Plaintiff was not allowed to rebut audit findings in one case, and that once New Manager threatened to initiate an audit of Plaintiff's time cards.  [#79 at 18-19]  Plaintiff does not make any allegation that any of these actions were motivated by any individual's consideration of Plaintiff's age.

Plaintiff makes only three allegations regarding a hostile work environment that directly implicate age.   First, Plaintiff alleges that she was denied unspecified development and advancement opportunities that were afforded to younger co-workers. [*Id.* at 18]  Second, Plaintiff alleges she had a heavier workload than younger employees. [*Id.* at 7]  Finally, Plaintiff alleges that a senior official on one occasion referred to older employees as "the oldsters" during a discussion of succession planning.  [*Id.* at 38] But these allegations do not support a plausible inference that Plaintiff's workplace was so permeated with severe or pervasive intimidation, ridicule, and insult that the environment Plaintiff worked in could be characterized as abusive.  A single comment which could be deemed offensive concerning age is not sufficient to support a hostile work environment claim under the ADEA.  Denial of certain advancement opportunities without any further information does not further push Plaintiff's hostile work claim into the category of plausible.   Nothing Plaintiff alleges plausibly suggests that Plaintiff was subjected to severe or pervasive harassment or abuse related to her age.  Accordingly, the Court GRANTS the Motion to the extent that it seeks dismissal of the portion of Claim One that asserts a claim for hostile work environment.

### D.    ADEA Retaliation

Defendant argues that Plaintiff does not plausibly allege retaliation.  [#82 at 7-9] Under the ADEA, it is "unlawful for an employer to discriminate against any of his

28

employees . . . because such individual . . . has opposed any practice made unlawful" by the ADEA.  29 U.S.C. § 623(d).  When a plaintiff lacks direct evidence of ADEA retaliation, the *McDonnell Douglas* burden-shifting scheme applies.  *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1201 (10th Cir. 2008).  "A prima facie case of retaliation requires the plaintiff to show that (1) he or she engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action."  *Id.* at 1202 (citing *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007)).

Like Plaintiff's retaliation claims under Title VII, CADA, and Section 1981, Plaintiff has not plausibly asserted a retaliation claim here.  Again, Plaintiff does not provide any information about when she complained about age discrimination or to whom she made such a complaint.  Plaintiff provides no nexus between the person(s) to whom Plaintiff complained and New Manager or any other individual who engaged in the conduct Plaintiff alleges to have been retaliatory.  Instead, any link Plaintiff provides between actions and an allegedly retaliatory motive is mere speculation.[22]  This is insufficient to state a plausible claim of retaliation under the ADEA.  Accordingly, the Court GRANTS the Motion to the extent that it seeks dismissal of Claim Two.

### E.    Additional Claims for Relief

Plaintiff includes a final paragraph in her Complaint which states "[a]dditional claims for relief as new causes of action were noted in motions related to the incorrectly

---

[22] Plaintiff's statement that the alleged retaliatory actions occurred "in close temporal proximity" to Plaintiff's filing of her Complaint is conclusory and, without factual support, does nothing to bolster Plaintiff's claims.  [#79 at 40-41]

named party; Plaintiff ran out of time to add this information." [#79 at 54] Plaintiff clarifies that this paragraph adds no new legal theories, elements, or statutory bases. [#87 at 22] Accordingly, the Court does not address Defendant's arguments as to this paragraph.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint Under Fed. R. Civ. P. 12(b)(6) [#82] is **DENIED** to the extent that it seeks to dismiss the ADEA discrimination based on failure to promote and different terms and conditions components of Claim One and **GRANTED** to the extent that it seeks to dismiss all other claims and the hostile work environment component of Claim One. Accordingly Claims Two through Six, and the hostile work environment component of Claim One are **DISMISSED WITHOUT PREJUDICE**. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) (holding that when the plaintiff is proceeding pro se, dismissal with prejudice is only appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend" (quotation omitted)); *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (holding prejudice should not attach to dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues"). The stay that had been previously imposed is **LIFTED**. A scheduling conference is set for April 9, 2026 at 9:30 a.m. The parties shall submit a joint proposed scheduling order by April 2, 2026.

DATED:   March 12, 2026                        BY THE COURT:


                                               s/Scott T.  Varholak
                                               Chief United States Magistrate Judge


30